**COUNTIES**

**E**DUCATION **– P**UBLIC **S**CHOOLS **– P**UBLIC **L**OCAL **L**AW **P**RECLUDES **F**REDERICK **C**OUNTY **C**OMMISSIONERS FROM **A**MENDING **C**URRENT **B**UDGET OF **B**OARD OF **E**DUCATION TO **R**ECOGNIZE **U**NANTICIPATED **S**URPLUS FROM **P**RIOR **F**ISCAL **Y**EAR

May 2, 2002

*Mr. David P. Gray, President*
*Frederick Board of County Commissioners*

You have requested our opinion whether the Board of County Commissioners for Frederick County may approve certain budget amendments relating to the County schools. Your inquiry was prompted by several requests by the local board of education to amend its budget for the current fiscal year, to increase the amount listed in the "surplus" line of the revenue portion of the budget and to add offsetting expenditures. We understand that the approved budget originally included $1 million in estimated surplus[1] and that an audit after the close of the prior fiscal year subsequently revealed an actual surplus exceeding $5 million.

You included with your request a memorandum by the County Attorney. A copy of that memorandum is attached to this opinion. The County Attorney concluded that the County Commissioners may not amend the budget they had previously adopted in order to recognize an increase in the amount of "surplus" listed under revenue from "local" sources.

---

[1] A local board of education's operating budget must include, among estimated receipts, "unliquidated surplus, the actual from the previous fiscal year and the estimated from the current fiscal year, whether accrued from revenues or expenditures." Annotated Code of Maryland, Education Article, §5-101(b).

We have carefully reviewed the County Attorney's memorandum and agree with that conclusion. Like the County Attorney, we reach this conclusion because the General Assembly has generally prohibited the Frederick County Commissioners from increasing the local budget after it has been adopted. Public Local Laws for Frederick County, Frederick County Code, §§2-7-5, 2-7-6.

We add two caveats. We note, as did the County Attorney, that the proposed budget amendments list the increase in surplus under revenues from "local" sources. If the increased surplus were attributable to unanticipated State or federal revenue – *e.g.*, receipt of federal funds in excess of estimates – the County Commissioners would have discretion to approve the expenditure of those funds even after adoption of the budget. *See* Annotated Code of Maryland, Education Article ("ED"), §5-105(c).

Second, we do not adopt the County Attorney's analysis of the Education Article with respect to unanticipated local funds. The County Attorney observed that ED §5-105(c) authorizes a local governing body to approve a local board of education's expenditure of unanticipated "nonlocal" funds. He reasoned that the absence of a parallel provision in ED §5-105 or elsewhere in the Education Article concerning the expenditure of unanticipated "local" funds implicitly forbids a local governing body from approving increased expenditures from local funds. However, the absence of such a provision may not signify a legislative intent to prohibit an increase in a local appropriation in all jurisdictions. Rather, the explicit requirement in ED §5-105(c) that a local governing body approve the expenditure of new "nonlocal" funds may be designed to ensure that the local governing body has notice of, and exercises some control over, the use of such funds. Because the local governing body would necessarily be involved in an appropriation increasing local funds available for expenditure, the General Assembly may have seen no need to provide in the Education Article for special notice and authorization.[2] In any event, we need not resolve that question for, in Frederick County, the public local law governing the county budget constrains the Commissioners' discretion over the use

---

[2] Notably, regulations of the State Board of Education governing the "maintenance of effort" computations that relate to local funding recognize that a county "may decide to appropriate additional funds to its school operating budget during a fiscal year." COMAR 13A.02.05.03B(4).

of local funds.  Thus, our conclusion relates solely to Frederick County.

J. Joseph Curran, Jr.
*Attorney General*

Robert N. McDonald
*Chief Counsel*
 *Opinions and Advice*

**OFFICE OF THE COUNTY ATTORNEY
FREDERICK COUNTY, MARYLAND**
*Winchester Hall, 12 East Church Street, Frederick, Maryland 21701*
*301-694-1030 - FAX 301-694-1161 - TTD 301-694-1672*

**MEMORANDUM**

**TO:**      Board of County Commissioners

**FROM:**  John S. Mathias, County Attorney

**DATE:**    April 10, 2002

**RE:**       Increase in Surplus Revenue Category in Board of Education FY 2002 Budget

The Frederick County Board of Education has recently requested a Budget Amendment that would increase the "surplus" revenue category (identified as "local source") for the FY 2002 Board of Education budget.  The question has been raised as to whether such an increase is permissible under State law.

As explained more fully below, nowhere in State law is there an authorization for such an increase.  Given that other, similar

increases are specifically authorized, the absence of such authorization means that this increase is not permissible under State law.

## BACKGROUND

The Board of County Commissioners approved the FY 2002 Budget for the Frederick County Board of Education. The Board of Education has recently made several "Current Expense Fund Requests for Budget Amendment." See attached Requests No. 20-02, 21-02, 22-02 and 23-02. In each of these requests, the Board of Education is asking to increase the "major category revenues" identified as "surplus" under the "source" "local."

The requested increases represent money from the FY '01 budget which the Board of Education did not spend. The approved FY '02 budget included an estimate of $1 million in unliquidated surplus. An audit completed after the end of the fiscal year in November of 2001 certifies that the actual unliquidated surplus which existed on June 30, 2001 was $5,140,094. According to the Board of Education, this is a result of under expenditure of funds within the 15 designated categories and revenue receipts in excess of budget estimates in the FY '01 budget year.

The Board of County Commissioners considered these requests at the April 2, 2002 worksession and voted to deny these requests. This denial was based, at least in part, on an electronic mail message sent by me to the County Manager and to the County Finance Director indicating that I could find no legal authority authorizing this increase in "surplus." At this worksession, the County Commissioners also requested that an Opinion from the Attorney General be sought on this issue.

## LEGAL DISCUSSION

### A. BOARD OF EDUCATION BUDGET PROCESS

The Maryland Court of Appeals has recently described the budgetary process involving the County Government and the County Boards of Education as follows:

> The county boards (of Education) prepare and submit their annual budgets to the respective county governments which, subject to certain limitations and

> requirements, have ultimate approval authority over them. See ED §§5-102 and 5-103; 76 Op. Atty. Gen 181, 184 (1991). The State Department of Education, the Governor, and the General Assembly are not directly involved in the budget process for the county boards .... They are subject to the county, not the State, budget process .... ***Chesapeake Charter, Inc. vs. Anne Arundel County Board of Education,*** 358 Md. 129, 747 A.2d 625, 630-31 (2000).

State law closely regulates the budget process for the Board of Education. Maryland Annotated Code Education Article §5-101 *et seq.* Each County Board of Education is required to prepare an annual budget according to the major categories listed in §5-101. This budget is then submitted to the County Government. Section 5-102.

The County Government is required to provide the minimum amount established in 5-202 ( commonly referred to as the "maintenance of effort.") Section 5-103(a). A failure to fund the maintenance of effort could result in the loss of State financial assistance for County schools. Section 5-202. The County Government may provide more than the maintenance of effort amount, §5-103(b), but may also deny budget requests from the Board of education in excess of the maintenance of effort amount. For a similar discussion of these State law budget provisions, *see* 85 *Opinions of the Attorney General* 167 (2000). For a discussion of the maintenance of efforts requirements, *see* 76 *Opinions of the Attorney General* 153 (1991); and 81 *Opinions of the Attorney General* 26 (1996) (Characterizing the maintenance of effort requirements as "extremely complicated").

The Board of Education must spend all revenues received in accordance with the major categories of its annual budget. Section 5-105(a). The Board of Education may make transfers *within* the major categories without recourse to the County Government but must timely report such transfers. Section 5-105(b). Transfers *between* major categories require County Government approval. Section 5-105(b)(2). A written request for a transfer between major categories is approved if the County Government fails to act within 30 days of receiving it. Section 5-105(b)(3).

If the Board of Education commits to spend more than the budgeted amount in any major category, the Board of Education must provide a timely report to the County Government. Section 5-105(b)(4).

The Maryland Attorney General, in reviewing these statutes, has observed: "Moreover, it is implicit in this scheme that a board (of education) is to follow county budget procedures not inconsistent with State law." 85 *Opinions of the Attorney General* 132 (2000) citing 68 *Opinions of the Attorney General* 236, 239 (1983).

The State law specifically allows "nonlocal funds received by a county board after the adoption of the annual budget by the countyfiscal authority" to be spent so long as the County Government approves. Section 5-105(c). "Nonlocal funds" is not a term defined in the Education Article. (In fact, a Lexis Nexis search reveals that the only use of the word "nonlocal" in the Annotated Code is in §5-105.) Reference to the 5 categories of "Current expense funds, estimated receipts" may provide guidance as to what constitutes "nonlocal funds." Section 5-101(b)(1) lists the following categories:

> (1) Current expense fund, estimated receipts:
>
>> (i) Revenue from local sources;
>>
>> (ii) Revenue from State sources;
>>
>> (iii) Revenue from federal sources;
>>
>> (iv) Unliquidated surplus, the actual from the previous fiscal year and the estimated from the current fiscal year, whether accrued from revenues or expenditures; and
>>
>> (v) Revenue from all other sources with identification of the source.

The regulations of the State Board of Education provide only limited guidance. The annual school budget is to be in accord with the "Financial Reporting Manual for Maryland Public Schools Revised 1996 and Supplement 1." COMAR 13A.02.01.02C. This manual does not define "nonlocal funds." "Local Appropriations" is defined as "Money received out of funds set aside periodically by the appropriating body (city council, county commissioners, or

county council) for school purposes." Financial Reporting Manual for Maryland public Schools at 28.

Which of these 5 categories qualify as "nonlocal funds" for purposes of Section 5-105(c)? Category "(i) Revenues from local sources" is not "nonlocal." Category "(ii) Revenue from State sources" and category "(iii) Revenue from federal sources" would be "nonlocal." The characterization of category "(iv) Unliquidated surplus" and category "(v) Revenue from all other sources with identification of the source" would appear to require further investigation.

The State law is silent as to any expenditure of <u>local</u> funds allocated or received after the adoption of the budget.

## B. BOARD OF COUNTY COMMISSIONERS SUPPLEMENTAL APPROPRIATIONS

The Board of County Commissioners is generally prohibited from increasing its budget after the budget has been adopted. Public Local Laws for Frederick County, Section 2-7-6 Frederick County Code (1979). State law specifically authorizes the County Commissioners to expend "restricted revenues" received after the adoption of the fiscal year budget:

> (A) The board of county commissioners may expend restricted revenues even though these revenues are received subsequent to the adoption of the fiscal year budget. Restricted revenues include funds received as a result of state or federal legislation or grants issued by state or federal agencies or other sources that are provided to accomplish specific goals, objectives, or services through the expenditures of the restricted revenue funds. Public Local Laws for Frederick County, Section 2-7-6 Frederick County Code (1979).

During the 2000 General Assembly Session, the Board of County Commissioner was specifically granted the limited ability to increase expenditures during the fiscal year to repay debt only:

> (B)(1) After January 1 of any fiscal year, if the Board of County Commissioners

reasonably anticipates that revenues for a fiscal year will be sufficient to fund increased expenditures, the Board of County Commissioners may increase expenditures adopted in the budget for the fiscal year by an amount not to exceed the increased fiscal year revenues.

(2) These increased expenditures may only be used to repay debt.

Public Local Laws for Frederick County, Section 2-7-6(B), Frederick County Code (1979); Chapter 261, 2001 Laws of Maryland.

## C. APPLICATION OF STATE LAW TO SPECIFIC BOARD OF EDUCATION REQUESTS

The specific requests from the Board of Education at issue here would increase "surplus." Each request for budget amendment adds an "amount to be added" to "major category revenue" with a "local" "source" identified as "surplus." See Budget Amendments No. 20-02, 21-02, 22-02 and 23-02. Under the language of §5-101(b)(1)(iv) this is a request to increase the "(1) Current expense fund, estimated receipts .... (iv) Unliquidated surplus, the actual from the previous fiscal year and the estimated from the current fiscal year, whether accrued from revenues or expenditures" (As this is a figure which was prepared during FY 2001, the previous fiscal year in this context would be FY 2000 and the current fiscal year would be FY 2001.)

From the footnote on each budget amendment, it appears that this "surplus" in the amount of $1 million was originally included in the approved FY '02 budget as a §5-101(b)(1)(i) "revenue from local sources." This amount was then broken out by the Board of Education under the "surplus" category in the proposed budget amendments.

State law does not explicitly address whether or not the Board of Education or the Board of County Commissioners may increase this "surplus" category after the budget year has begun. The State law does specify how to expend "nonlocal funds received by a County board after the adoption of the annual budget by the County fiscal authority." Section 5-105(c). The County fiscal authority must be notified and must approve of the source and amount of funds and manner of spending. Section 5-105(c). This is the

mechanism typically used to expend federal and state grant funds received during a fiscal year. This appears to correspond to the categories in §5-101(b)(1)(ii), and (iii), "(ii) Revenue from State sources", and "(iii) Revenue from federal sources."

In a different factual setting the question of whether "surplus" constitutes "nonlocal funds" might be problematic. In this particular case, the surplus is clearly "local". The Board of Education FY '02 Annual Budget included this "surplus" under the "local" category and has only extracted it from the "other local" category for purposes of the Budget Amendments. See footnotes to Budget Amendments #20-02, 21-02 and 22-03.

No provision similar to §5-105(c) exists for the expenditure of "local" funds. (Categories i and iv from §5-101(b)(1)). The Board of Education has listed this "surplus" under the "local source". Because the State law specifically allows for the expenditure of "nonlocal funds" after the budget has been adopted, the absence of a similar provision for spending "local" funds strongly suggests that "local" funds may not be increased after the budget has been approved. If the General Assembly had intended to authorize the expenditure of "local" funds after the budget was adopted, it clearly knew how to express this. E.g. ***Mossburg v. Montgomery County,*** 329 Md. 494, 505, 620 A.2d 886, 892 (1993) ("This court has regularly held that where the Legislature in a statute expressly authorizes a particular action under certain circumstances, the statute ordinarily should be construed as not allowing the action under other circumstances.") The Latin maxim is "inclusio unius est exclusio alterius."

The wording of §5-101(b)(1)(iv) supports this conclusion. The full wording identifying this category is: "(iv) Unliquidated surplus, the actual from the previous fiscal year and the estimated from the current fiscal year, whether accrued from revenues or expenditures." This wording recognizes the timing of the budget process. The annual budget must be prepared before the start of the fiscal year. The actual surplus for a fiscal year cannot be calculated until several months after the fiscal year ends. The wording of §5-101(b)(1)(iv) recognizes this by specifying an estimate for the current fiscal year while specifying the actual for the prior fiscal year. If the budget estimate for the current fiscal year could later be increased during the budget year the inclusion of the actual surplus from the previous fiscal year would appear unnecessary. Any difference between the estimated surplus and actual surplus could be addressed by Budget Amendment. Had the General Assembly desired this result separate

mention of the actual surplus from the previous fiscal year would not have been necessary in §5-105(b)(1)(iv).

In this instance, the Board of Education submitted its FY '02 budget to the County Commissioners during FY '01. The FY '02 budget, under §5-101(b)(1)(iv), could have included the actual surplus from the previous fiscal year, FY '00, and an estimate of the current year, FY '01. The actual surplus from FY '00 would be based on the audited figures determined in the fall of 2000 after the close of FY '00.

The regulations of the State Board of Education do not address this specific situation. COMAR 13A.02.01.02C. The regulations of the State Board of Education dealing with maintenance of effort do contain a sentence which states: "The county may decide to appropriate additional funds to its school operating budget during a fiscal year." COMAR 13A.02.05.03B(4). In context, this sentence should not be read as granting authority to each County to appropriate additional funds. If that were the intent, it would not be located within the maintenance of effort regulations. Instead, the quoted sentence seems more appropriately to be interpreted as recognition that some counties (not Frederick County) may have authority to appropriate additional local funds during a budget year. This regulation would then address how this situation would be treated for maintenance of effort purposes. Interpreting the quoted regulation as granting County authority for additional appropriations would also be beyond the scope of the State law authority granted to the State Board.

## CONCLUSION

No provision of State law authorizes an increase in the Board of Education's budget under the categories of "Revenue from local sources" or "surplus." Section 5-101(b)(1). State law does specify how to spend "Nonlocal funds" received by a county board after the adoption of the annual budget by the County fiscal authority." Section 5-105(c). This different treatment of the two categories is important. Therefore, neither the Board of Education nor the Board of County Commissioners is authorized to increase the Board of Education budget categories of "Revenue from local sources" or "surplus" during the fiscal year.